UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

GERALD MAIRA,

                          Plaintiff,

v.

STI-CO INDUSTRIES, INC.,

                         Defendant.

_____

**REPORT AND
RECOMMENDATION**

**Case No. 1-20-cv-00447-LJV-JJM**

        This case has been referred to me by Hon. Lawrence J. Vilardo for supervision of all pretrial proceedings, including the preparation of a Report and Recommendation on dispositive motions [8].[1] Plaintiff Gerald Maira commenced this action against the defendant Sti-Co Industries, Inc., alleging claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12111 *et seq*., and the New York State Human Rights Law ("NYSHRL"), N.Y. Executive Law §296, for failing to afford him a reasonable accommodation, and retaliation. Notice of Removal [1], Complaint, pp. 7-9. Following defendant's first motion to dismiss [7] and the plaintiff's cross-motion [13] for leave to amend his complaint, the parties stipulated [16] to permit plaintiff to file his Amended Complaint.

        Before the court is defendant's motion [18] to dismiss plaintiff's Amended Complaint [17] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") for failure to state a claim upon which relief can be granted. For the following reasons, I recommend that the motion be granted as to plaintiff's ADA claims, and that the court decline to exercise supplemental jurisdiction over plaintiff's NYSHRL claims.

_____

[1]      Bracketed references are to CM/ECF docket entries. Page references are to CM/ECF pagination (upper right corner of the page).

## BACKGROUND

Plaintiff alleges that he suffers from post-traumatic stress disorder ("PTSD"), anxiety, attention deficit hyperactivity disorder ("ADHD"), tendonitis, and repetitive use syndrome.  Amended Complaint [17] ¶ 9.  These disabilities "substantially limited one or more a [*sic*] major life activities, and/or led to the perception of such a disability and give rise to the instant claims of discrimination" and, accordingly, qualified as "a disability or impairment under the meaning of the ADA and NY Executive Law".  Id., ¶¶ 10-11.  Plaintiff further alleges that he "was limited in his ability to work, thinking, concentrating, learning, reading, performing manual repair activities, speaking in front of groups of people, and sleeping".  Id.  Despite his alleged disabilities, plaintiff was "able to perform the essential duties of his employment positions at Sti-Co, provided that his disabilities and impairments were accommodated by having a quiet work location within the employers [*sic*] facility . . . and provided he was not required to perform other duties not within his job description", including "repairing returned products, in light of his tendonitis".  Id., ¶ 12.

Plaintiff "told his supervisors and Defendant's company leadership as early as 2003 that he could not work in a noisy environment; that doing so was extremely distracting and disruptive to him; and that it affected his ability to work".  Id., ¶ 15.  However, he did not inform his employer of any disability until 2015, when he completed "a voluntary disclosure form complying with the ADA, in which he disclosed that he had a disability without more".  Amended Complaint [17], ¶ 13.  Plaintiff filed a workers' compensation claim related to tendonitis "in late 2014 and early 2015".  Id., ¶ 16.  In "mid-2017", plaintiff communicated with his employer orally and by email about his "40-year history of PTSD and anxiety".  Id., ¶ 17.  Although it is unclear from the Amended Complaint when plaintiff began working in the quiet

area that he had "long sought", "[p]rior to mid-2017, [plaintiff] had worked in an office at a distance from a noisy production floor". Id., ¶ 19.

In "later 2018 and early 2019", defendant's president advised plaintiff that "she wanted to have him work on 'more returns', that is, (physical repairs to returned products) [*sic*]". Plaintiff alleges he "informed her that that would be a 'big problem' because of his tendonitis and related arm limitations". Id., ¶ 20. Notwithstanding this conversation, plaintiff's supervisors informed him on February 28, 2019 that, beginning the next day, there would be a number of changes to his job duties (including "repairing returned customer equipment (which [plaintiff] was unable to perform due to tendonitis"), job title, compensation, and work schedule. Id., ¶ 26. In addition, plaintiff "was also to be assigned to a non-quiet area of the company to do his work". Id., ¶ 20.

Plaintiff alleges in his Amended Complaint that "[b]ecause by then Plaintiff had disclosed his disabilities and had for many months been provided a quiet work space, the unilateral withdrawal of that space and the associated change of work conditions, location, and noise level was a *de facto* refusal to continue making workplace accommodations consistent with the ADA and NY Executive Law", that the insistence "that he do work he was physically incapable of performing under non-accommodating conditions was, in itself, retaliatory". Id., ¶¶ 27-28. As a result, plaintiff alleges the "changes in work conditions were either intended to, or did, in fact, have the effect of provoking Plaintiff's withdrawal from the workplace, and constituted retaliation for disclosing his prior disability impairments (PTSD, [ADHD], anxiety, tendonitis) and Plaintiff's requests for accommodations of a quiet workplace". Id., ¶ 29. He alleges further that the changes "subjected Plaintiff to constructive discharge". Id., ¶ 30.

## DISCUSSION

### A.    Dismissal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face . . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotations omitted).

Moreover, although "a court must accept as true all of the allegations contained in a complaint", that maxim is "inapplicable to legal conclusions". Id.   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.  *See also* Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (citing Iqbal, supra).

This court, "in deciding whether to dismiss a complaint under Rule 12(b)(6), 'is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference'". Williams v. Time Warner Inc., 440 F. App'x 7, *9 (2d Cir. 2011) (Summary Order) (*quoting* Taylor v. Vermont Department of Education, 313 F.3d 768, 776 (2d Cir. 2002)).  Here, because no documents are attached to the Amended Complaint or referred to therein, my analysis is limited to the allegations of the Amended Complaint.[2]

---

[2]    Plaintiff attempts to introduce additional factual allegations in his attorney's Declaration [O]pposing 12(b)(6) Motion to Dismiss [25] ("Opposing Declaration").  However, because these

**B.      Plaintiff Abandoned Any Claims for Retaliation and Hostile Work Environment**

As an initial matter, and unlike a traditional counseled complaint, plaintiff's

complaint here fails to identify, by way of heading or otherwise, the specific ADA cause(s) of

action he is alleging.  *See* Amended Complaint [17]; *see also, e.g.* Klaes v. Jamestown Board of

Public Utilities, 2013 WL 1337188, *6-12 (W.D.N.Y. 2013) (discussing separately two types of

ADA claims for discrimination (*i.e.* adverse action and failure to accommodate), and claims for

retaliation for engaging in an activity protected by the ADA).  In its motion to dismiss, defendant

has identified a range of potential claims it identified from the facts alleged in the Amended

Complaint, including intentional discrimination based on adverse action (defendant's

Memorandum of Law [18-1], pp. 4-11), failure to accommodate (id., pp. 12-13), retaliation (id.,

pp. 13-16), and hostile environment (id., pp. 16-19).

In his Opposing Declaration, plaintiff's attorney does not address defendant's

arguments concerning claims for retaliation or hostile work environment.  Where a plaintiff's

papers responding to a motion to dismiss fail to address an issue raised by defendant, "[t]his

Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a

defendant's arguments that the claim should be dismissed".   Kabrovski v. City of Rochester,

149 F.Supp.3d 413, 422 (W.D.N.Y. 2015) (citing Rubin v. Abbott Labs, 2015 WL 5679644, *7

(S.D.N.Y. 2015) (internal quotation omitted)); *see also* LaFace v. Eastern Suffolk Boces, 2019

WL 1959489, *8 (E.D.N.Y. 2019) ("[i]n the Second Circuit, a plaintiff's failure to respond to

contentions raised in a motion to dismiss claims constitute an abandonment of those claims")

(internal quotation and alterations omitted) (compiling cases).

---

allegations do not appear in the Amended Complaint and are not presented in evidentiary form, I decline
to consider them here.

Plaintiff's Amended Complaint is ambiguous concerning the specific claims it asserts due to its failure to specifically link any of the facts he alleges to specific claims one might make under the ADA. Although one could construe certain facts alleged in the complaint consistent with other causes of action not promoted by plaintiff's Opposing Declaration, I decline to do so here. Plaintiff is the master of his own claims, and knows best the types of claims he intends to allege in his Amended Complaint. "[A]lthough Plaintiffs' claims might conceivably be cast [differently], a plaintiff is the master of his or her own claims; the Court need not recast Plaintiffs' . . . causes of action". Hendricks v. Dynegy Power Marketing, Inc., 160 F.Supp.2d 1155, 1156–57 (S.D. Cal. 2001); see also Caterpillar Inc. v. Williams, 482 U.S. 386, 398–99 (1987) ("the plaintiff is the master of the complaint").

Moreover, I note that plaintiff's counseled complaint is not entitled to the treatment afforded to complaints drafted by *pro se* litigants. *See* Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers") (internal quotation and citation omitted).

Accordingly, plaintiff has abandoned his ADA claims for retaliation and hostile work environment. His counseled complaint does not clearly state them, and his response to defendant's motion to dismiss does not preserve them.

## C.    Elements of ADA Claims for Failure to Accommodate, Intentional Discrimination, and Constructive Discharge

Plaintiff's opposing papers appear to address three kinds of ADA claims: 1) failure to accommodate; 2) intentional discrimination based on adverse action; and 3) constructive discharge. *See* Opposing Declaration [25], ¶ 15 ("[p]laintiff's main claim by complaint is that the employer unilaterally withdrew such accommodations and refused [to] consider [p]laintiff's work conditions 'under guise' . . . of 'restructuring' his job"); ¶ 21 ("the

case is essentially a claim that the employer provided accommodations for two or more years, the . . . unilaterally changed [p]laintiff's job duties and conditions");  ¶ 29 (*citing* <u>Beck v. University of Wisconsin Board of Regents</u>, 75 F.3d 1130, 1135 (7th Cir. 1996) concerning an employer's obligation "to engage in an 'interactive process' to arrive at accommodation needs");  ¶ 31, p. 6 of 8 (*citing* <u>Beck</u>, <u>supra</u> and comparing the facts there to those here, where "the interactive process was never started");  ¶ 31, p. 7 of 8 ("[d]efendant employer . . . knew of an obligation to accommodate his disabilities; and unilaterally made the determination to redefine his job position and description to remove those prior accommodations"); ¶ 32, p. 7 of 8 (*citing* <u>Cullen v. Verizon Communications</u>, 2015 WL 4508711 (W.D.N.Y. 2015) to illustrate the elements of claims for failure to accommodate and adverse action).  *See also*  ¶¶ 10, 14-20, 22-23 and 32, p. 7 of 8 (addressing defendant's arguments concerning his claim for adverse action, and countering defendant's arguments concerning the "but-for" causation element of that claim); ¶¶ 29 and 31, p. 6 of 8 (arguing the employer was obligated to, but did not, engage in the interactive process because it informed him "that the very next day he would have different working conditions, that he would no longer be placed in a quiet work area, and that his job description would be changed to include duties he had previously advised he could either not do or could only do with accommodations").

Failure to accommodate claims are evaluated under the framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  *See* <u>Snowden v. Trustees of Columbia University</u>, 612 F. App'x  7, 8 (2d Cir. 2015) (Summary Order).  "[A] plaintiff makes out a prima facie case of disability discrimination arising from a failure to accommodate by showing each of the following: (1) Plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation,

plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." McBride v. BIC Consumer Products Manufacturing Co., Inc., 583 F.3d 92, 96-97 (2d Cir. 2009) (internal alterations and quotations omitted).

To state a claim for intentional discrimination based upon an adverse action, a plaintiff must allege: "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability or perceived disability." Capobianco v. City of New York, 422 F.3d 47, 56 (2d Cir. 2005).

Finally, a plaintiff has a claim for constructive discharge when "an employer intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily. . . . Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign. . . . Merely difficult or unpleasant working conditions do not rise to the level of constructive discharge." Keating v. Gaffney, 182 F.Supp.2d 278, 289 (E.D.N.Y. 2001) (internal alterations, quotations, and citations omitted).

## D.    Plaintiff Did Not Sufficiently Allege that his Disabilities Substantially Limit a Major Life Activity

The element common to claims for a failure to accommodate and for intentional discrimination is that the plaintiff suffers from (or is regarded as suffering from) a disability within the meaning of the ADA. The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities". 42 U.S.C. § 12102(1)(A). Examples of major life activities are "caring for oneself, performing manual tasks, seeing,

hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working". Id. In order to state a claim under the ADA, and to survive a motion to dismiss, plaintiff's complaint must contain facts indicating that his impairment "substantially limits one or more of his major life activities". Cullen, 2015 WL 4508711 at *2. I agree with defendant that plaintiff has not adequately plead facts sufficient to plausibly allege that his impairments substantially limit a major life activity. See Defendant's Memorandum of Law [18-1], pp. 5-7. Plaintiff identifies PTSD, anxiety, ADHD, and tendonitis as impairments. See Amended Complaint [17], ¶ 9. He alleges that those disabilities "substantially limited one or more a [sic] major life activities" and that he "was limited in his ability to work, thinking, concentrating, learning, reading, performing manual repair activities, speaking in front of groups of people, and sleeping". Id., ¶ 10. Id. Elsewhere, plaintiff alleges "he had placed himself in stress daily" (id., ¶ 19), was "subject to distraction and interference with his work" (id. ¶ 21), and that "his anxiety interfered with [his] ability to speak to groups of people" (id.). These allegations, however, are conclusory and vague assertions rather than facts that plausibly support the conclusion that his impairment(s) significantly limited one or more of his major life activities.

Plaintiff argues that the court's analysis in Cullen, supra, demonstrates that the Amended Complaint "has met the pleadings requirements to withstand the instant motion to dismiss". Opposing Declaration [25], ¶ 34. I disagree. In Cullen, supra, the plaintiff alleged that his employer violated the ADA when it stopped accommodating his alcohol addiction. There, the employer had previously accommodated plaintiff by not assigning him "on the road" duties after he lost his driver's license. This court dismissed plaintiff's first complaint because he "failed to plead any facts indicating that his alleged alcoholism limited one or more of his

major life activities".  Cullen, 2015 WL 4508711, *2.  Plaintiff amended the complaint with an

allegation that  "alcoholism has affected his cognitive abilities, the ability to care for himself, his

ability to drive and his ability to work".  Id. at *3.  The court found this allegation insufficient to

satisfy plaintiff's pleading obligations:

> "As Defendant argues, this vague assertion that Plaintiff's
> alcoholism merely 'affected' certain abilities is unsupported by any
> specific facts which would plausibly support a conclusion that one
> or more major life activities were *significantly* limited by the
> alleged impairment.  *See Dancouse v. [Mount] Morris Cent. Sch.
> Dist.*, 590 F. App'x 27, 28 (2d Cir. 2014) (allegations that
> periodontal disease caused 'anxiety and depression' and prevented
> the plaintiff from "*adequately* communicating, sleeping, eating,
> reading, thinking, concentrating and interacting with others' failed
> to provide a plausible factual basis that the alleged impairment
> substantially limited any major life activity (emphasis added))."

Id. at *3 (emphasis in original).

Here, plaintiff simply restates the statutory language when he alleges that his

impairments "substantially limited one or more a [*sic*] major life activities".  *Compare* Amended

Complaint [17], ¶ 10 (emphasis added) *with* 42 U.S.C. § 12102(1)(A) (defining "disability" as "a

physical or mental impairment that substantially limits one or more major life activities")

(emphasis added).  Plaintiff's allegation listing major life activities affected by his impairments

similarly paraphrases the statutory language, without more.  *Compare* Amended Complaint [17],

¶ 10 ("[s]pecifically . . . plaintiff was limited in his ability to work, thinking, concentrating,

learning, reading, performing manual repair activities, speaking in front of groups of people, and

sleeping") (emphasis added) *with* 42 U.S.C. § 12102(2)(A) ("[f]or purposes of paragraph (1),

major life activities include . . . performing manual tasks, sleeping . . . learning, reading,

concentrating, thinking, communicating, and working") (emphasis added).  However, simply

stating that one is "limited" in these areas is insufficient to allege a significant limitation.  *See*

Cullen, 2015 WL 4508711, *3 (rejecting descriptive terms such as "affected" and "adequately" to plausibly allege a significant limitation).

Moreover, as in Cullen, plaintiff here alleges no facts to demonstrate his limitations or their severity. For example, plaintiff alleges he told his employer "as early as 2003" - long before he disclosed any disability - that "he could not work in a noisy environment; that doing so was extremely distracting an disruptive to him; and that it affected his ability to work". Amended Complaint [17], ¶ 15. Plaintiff does not say how the noisy environment "affected" his ability to work or incorporate any fact-based example to illustrate how he was limited. In addition, plaintiff states that someone,[3] "very soon after a May 1, 2017 disclosure of a 40-year history of PTSD and anxiety", "implied that he had placed himself in stress daily while working" at Sti-Co. Id., ¶ 19. However, this allegation does not affirmatively state that his conditions caused him stress (only that someone implied that they do) and does not identify any limitation, significant or otherwise, that he experienced because of the implied stress. Elsewhere, plaintiff states that "[a]s a disabled person suffering from 40 years of PTSD and anxiety . . . he was subject to distraction and interference with his work". Amended Complaint [17], ¶ 21.

Plaintiff alleges further that "his anxiety interfered with [his] ability to speak to groups of people". Id. As in Cullen, supra, plaintiff's assertions that he was "subject to" distraction, that a noisy environment "affected" his ability to work, and that anxiety "interfered" with his ability to speak to groups of people are insufficient to allege that any impairment caused a *significant* limitation. Plaintiff's conclusory allegation that the "noisy environment" was "extremely distracting and disruptive", even if it was sufficient to allege a *significant* limitation

_____

[3]    Paragraph 19 of the Amended Complaint appears to include an error which makes it unclear who "implied" that plaintiff had "placed himself in stress daily".

to a major life activity, is insufficient to allege that it was an *impairment* that caused the limitation.  Plaintiff attributes the distraction and disruption to the "noisy environment", not to his impairment.  Without some additional fact from which we can infer that plaintiff's PTSD condition *coupled with* exposure to a noisy environment combined to create a substantial limitation, plaintiff's complaint fails to plausibly allege that his impairment caused a significant limitation.

        With respect to plaintiff's alleged tendonitis impairment, the Amended Complaint similarly fails to allege any facts from which I can conclude that plaintiff has a significant limitation related to this condition.  Plaintiff alleges that he pursued a workers' compensation claim for "tendonitis and arm injury from repetitive use" "in late 2014 and early 2015" and that he "received medical treatment for tendonitis under that claim".  Amended Complaint [17], ¶ 16; *see also* id., ¶9 ("[p]laintiff suffers or suffered from . . . tendonitis and repetitive use syndrome from a 2014-2015 work-related NY worker compensation claim in an arm").  These allegations do not identify any permanent restrictions or limitations related to the tendonitis, nor do they state that his workers' compensation claim resulted in a finding of a permanent loss of use, from which I could infer that plaintiff had a substantial limitation.[4]  Elsewhere, plaintiff alleges he "was limited in . . . performing manual repair activities", and informed defendant's president that assigning him additional work duties (i.e. repairing customer returns)  "would be a 'big problem' because of his tendonitis and related arm limitations".  Id., ¶¶ 10, 20.  He does not, however, allege any facts from which I can discern what the "limitations" are or whether they are significant.  *See, e.g.* Glenn v. Kaleida Health, 2017 WL 3727313, *7 (W.D.N.Y.), adopted 2017

---

[4]      For this reason, I am also unable to infer, notwithstanding defendant's knowledge of plaintiff's tendonitis condition from the 2014-2015 workers' compensation claim (Amended Complaint [17], ¶ 16) , that defendant knew that plaintiff's tendonitis condition was a permanent disability that required accommodation.

WL 3713468 (W.D.N.Y. 2017) (in addition to alleging generally that she was disabled within the meaning of the ADA, plaintiff alleged she was "not always able to physically perform some of her duties due to her disability", was on "light duty" for five months, and took FMLA leave for six months due to her disability).   Accordingly, plaintiff's allegation that his ability to "perform manual repair activities" was "limited" (id., ¶ 10) is insufficient to plausibly allege a significant limitation.  S*ee* Cullen, 2015 WL 4508711, *3.

Plaintiff's opposition papers do not address this argument or identify allegations in the Amended Complaint that he believes satisfy his pleading obligations.  Instead, plaintiff attacks the pleading requirements outlined in Iqbal, supra, and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) ([25] ¶¶ 7-9) (both of which Cullen, supra, relies upon) and cites extensively to the Congressional Findings and Purposes of the ADA Amendments Act of 2008 ([25] ¶ 12) without further analysis.

For these reasons, plaintiff's Amended Complaint fails to plausibly allege he is a person with a disability within the meaning of the ADA.  I therefore recommend that defendant's motion be granted.

However, even if plaintiff had plead that he is a person with a disability within the meaning of the ADA, he failed to adequately plead other elements of his potential claims.  I address these in turn below.

**E.    Plaintiff Failed to Plead an ADA Claim**

In addition to his failure to plausibly allege a disability within the meaning of the ADA, I recommend dismissal for the separate reason that the Amended Complaint fails to plead sufficient facts to plausibly allege other elements of his potential claims: failure to accommodate; adverse employment action; and/or constructive discharge.

**1. Plaintiff Failed to State a Claim for Failure to Accommodate**

"[A] plaintiff makes out a *prima facie* case of disability discrimination arising from a failure to accommodate by showing each of the following: (1) Plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." McBride, 583 F.3d at 96-97. I agree with defendant that plaintiff fails to allege that defendant refused to make a reasonable accommodation. *See* Defendant's Memorandum of Law [18-1], pp. 12-13.

First, the Amended Complaint does not allege that plaintiff's request for a quiet work environment was a request for an accommodation related to his PTSD impairment or that the defendant knew it was an accommodation when it proposed to move his work location. Second, plaintiff does not allege that he requested an accommodation in February 2019 for his PTSD condition or that he otherwise engaged in the interactive process required to secure an accommodation. Third, plaintiff failed to allege any request for an accommodation related to any other alleged impairment.

**a. Plaintiff Did Not Allege that His Request for a Quieter Work Location Was an Accommodation**

Plaintiff alleges that he requested a quieter place to work as early as 2003: many years before he allegedly revealed any impairment. Amended Complaint [17], ¶ 15. Plaintiff was already working in the quieter environment he desired prior to his mid-2017 disclosure to the employer of his impairments of PTSD and anxiety. Id., ¶ 19 ("[p]rior to mid-2017, he had worked in an office at a distance from a noisy production floor"). Plaintiff repeatedly labels the quieter work environment an "accommodation". *See* id., ¶¶ 12, 18,  21-23, 27-29, 38. However, nowhere does plaintiff state that he alerted defendant that his request for the quieter work

environment <u>was an accommodation of a disability</u> rather than a personal preference.  Nor does

he allege that defendant knew when it granted his request, or at any time thereafter, that the

quieter work environment it provided to plaintiff accommodated a disabling condition.[5]

Accordingly, plaintiff has not plausibly alleged that defendants' change of plaintiff's work

location in 2019 was a failure to accommodate, or a withdrawal of a previously provided

accommodation.  *See* <u>MacEntee v. IBM</u>, 783 F.Supp.2d 434, 444 (S.D.N.Y. 2011) (plaintiff's

failure to accommodate claim was dismissed where she did not allege that she told her employer

that her request for a "patient trainer" "was because of her depression", or that "her employer

had knowledge of any disability-related reasons for her request" to be transferred); *see also*

<u>Garcia v. Kings County Hospital Center</u>, 2018 WL 389212, *5 (S.D.N.Y. 2018) ("[w]hile

[plaintiff] alleges that Defendants knew about her mental illness, there is no indication that

Defendants were on notice that her difficulties at work and with her supervisor stemmed from

her disability").

### b. Plaintiff Failed to Allege He Requested an Accommodation for PTSD in February 2019 or That He Engaged in the Required Interactive Process to Secure an Accommodation

I also agree with defendant that plaintiff fails to allege that he either requested to

retain the quieter work location as an accommodation, or for the defendant to provide another,

equivalent accommodation, at the time defendant allegedly changed plaintiff's work location in

February 2019.  *See* Defendant's Memorandum of Law [18-1], pp. 12-13.  Instead of making any

---

[5]     The additional factual material incorporated in the declaration of plaintiff's attorney opposing the motion suggests that the employer may, in fact, have become aware at some point that the quieter work environment was an accommodation of plaintiff's later-disclosed conditions.  Opposing Declaration [25], ¶ 32.  These allegations, however, are not incorporated into the Amended Complaint.  Even if they were, however, they would not remedy plaintiff's failure to plausibly allege: 1) a disability under the ADA ; or 2) that he requested an accommodation.

request, plaintiff alleges that he "[withdrew] from the workplace". Amended Complaint [17], ¶ 29.

In his response, Plaintiff does not point to any affirmative request for accommodation alleged in his Amended Complaint. Instead, he cites case law requiring an employer to engage in an interactive process to determine an appropriate accommodation. Opposing Declaration [25] ¶¶ 29-31 *citing* Beck, 75 F.3d at 1135 ("the regulations envision an interactive process that requires participation by both parties"). In most cases, it is a plaintiff's responsibility to affirmatively request an accommodation. *See* Graves v. Finch Pruyn & Company, Inc., 457 F.3d 181, 184 (2d Cir. 2006) ("generally, 'it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed.' 29 C.F.R. pt. 1630, app. at 363 (2003)"). In some cases, however, "an employer is required to act proactively and engage in an interactive process to accommodate the disability of an employee even if the employee does not request accommodation". McElwee v. County of Orange, 700 F.3d 635, 642 (2d Cir. 2012). Even if plaintiff here was not required to affirmatively request an accommodation in the first instance because defendant already knew of his PTSD condition, plaintiff nonetheless had a responsibility to engage in the interactive process required by the regulations. *See* Beck, 75 F.3d at 1135. His failure to allege that he did so is fatal to his cause of action. *See also* Noel v. BNY-Mellon Corporation, 2011 WL 4633884, *2 (S.D.N.Y. 2011) ("[u]nder the ADA, an employee who withdraws from the interactive process cannot later allege failure to accommodate") (*citing* Beck, supra).

Here, plaintiff does not allege that he engaged in the required process, or any process. Instead, he alleges that the changes to his work location and duties "provoke[ed] [his] withdrawal from the workplace" and was equivalent to "constructive discharge". Amended

Complaint [17], ¶¶ 29, 30.  Plaintiff acknowledges in his opposition papers that "[i]n this case, the interactive process was never started".  Opposing Declaration [25], ¶ 31. Instead, plaintiff alleges that,"[b]ecause by then [he] had disclosed his disabilities and had for many months been provided a quiet work space, the unilateral withdrawal of that space and change of work conditions and location and noise level was a *de facto* refusal to continue making workplace accommodations consistent with the ADA and NY Executive Law".  Amended Complaint [17], ¶ 27.  This legal conclusion, however, is not supported by factual allegations that the defendant was aware the prior work arrangements were ADA accommodations, or that plaintiff requested an accommodation related to his impairments.

An employee who is responsible for the breakdown in the interactive process may not later assert a claim for a failure to accommodate.  *See* Beck, supra; Winbush-Jones v. Potter, 2009 WL 497637, *10-12 (W.D.N.Y. 2009) (finding plaintiff unreasonably caused the breakdown in the interactive process where she "left work before Defendant had an opportunity to offer further accommodations"); Noel v. BNY-Mellon Corp., 2011 WL 4633884, *2 (S.D.N.Y. 2011) ("[h]ere, [plaintiff] withdrew from the interactive process and thus cannot recover on her claim for failure to accommodate").  Plaintiff did not allege that he engaged in any attempt to request, secure, or even discuss the accommodations he believed he needed either on February 28, 2019, or at any other time.  Instead, he withdrew from the workplace.  Amended Complaint [17], ¶ 29.  Accordingly, the Amended Complaint fails to assert a claim for failure to accommodate.[6]

---

[6]     Although the additional factual allegations contained in plaintiff's attorney's Opposing Declaration are not considered for purposes of this analysis, we note that those allegations also support the conclusion that plaintiff's own actions frustrated the "interactive process" demanded by the regulations.  *See* Opposing Declaration, ¶ 32(e) (in a statement supposedly provided by one of defendant's managers to the NYS Department of Labor, the manager stated, "I have spoken with Mr. Collura and he said they were not able to get to the point of explaining how they would accommodate his

### c. Plaintiff Failed to Allege that He Requested an Accommodation for Tendonitis, Anxiety, or ADHD

Plaintiff's Amended Complaint is similarly deficient with respect to the accommodation he suggests he needs for his tendonitis impairment. Plaintiff alleges that he informed defendant that performing "physical repairs to returned products" would be a "big problem" due to his "tendonitis and related arm limitations". Amended Complaint [17], ¶ 20. There is no allegation in the Amended Complaint, however, suggesting that the lack of such duties in his job description prior to February 28, 2019 was an accommodation. Further, he does not allege that he requested any accommodation with respect to his tendonitis once defendant allegedly informed him "[i]n later 2018 and early 2019" or on February 28, 2019 that repairing returned customer equipment would be added to his job duties. *See* Amended Complaint v[17], ¶¶ 20, 27. Even if I assume that plaintiff's statement that "performing physical repairs to returned products" would be a "big problem" due to his "tendonitis and related arm limitations" (id., ¶ 20) was equivalent to a request for an accommodation, plaintiff's claim would nonetheless fail due to his failure to participate in the required interactive process.

Finally, plaintiff makes no allegations concerning any request for accommodation specific to his anxiety or ADHD conditions. Plaintiff alleges that "his anxiety interfered with [his] ability to speak to groups of people". Amended Complaint [17], ¶ 21. He does not, however, allege that he requested any accommodation for either anxiety or ADHD.

Accordingly, plaintiff has not alleged facts sufficient to support the conclusion that defendant "refused" to provide an accommodation with respect to any of his impairments and has not stated a claim for failure to accommodate. *See* Cullen, 2015 WL 4508711 at *2.

---

disabilities in this new position because Mr. Maira escalated so quickly when he [first] learned of the change. The intention was always to continue his reasonable accommodations, it was just a solution to a logistical problem of him being too far away from the people who needed to ask him questions").

### 2. Plaintiff Has Failed to State a Claim for Constructive Discharge

Plaintiff attempts to shift responsibility to defendant for the breakdown in the interactive process by labeling his withdrawal from employment a "constructive discharge". *See* Amended Complaint [17], ¶ 30; Opposing Declaration [25], ¶¶ 29 (stating that the interactive process "did not occur in this case because decisions had already been made"). However, plaintiff's allegations do not plausibly state a claim for constructive discharge:

> "Constructive discharge of an employee occurs when an employer intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily. . . . Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign. . . . Merely difficult or unpleasant working conditions do not rise to the level of constructive discharge."

Keating v. Gaffney, 182 F.Supp.2d at 288-89 (internal alterations, quotation, and citations omitted). A plaintiff can satisfy the elements of a claim for constructive discharge through pleading either a hostile work environment, or a failure to accommodate. Plaintiff failed to plead either.

As an initial matter, a complaint that fails to plead facts sufficient to describe a hostile work environment likewise fails to plead a claim for constructive discharge. "The Supreme Court has described a hostile-environment constructive discharge claim as 'graver . . . than its lesser included component, hostile work environment.'" Trachtenberg v. Department of Education of the City of New York, 937 F.Supp.2d 460, 468 (S.D.N.Y. 2013) (*citing* Pennsylvania State Police v. Suders, 542 U.S. 129, 149 (2004)). Here, plaintiff abandoned his potential claim for a hostile work environment because he failed to respond to defendant's argument that he failed to state a claim. *See* LaFace, 2019 WL 1959489 at *8 ("[i]n the Second Circuit, a plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitute an abandonment of those claims") (internal quotation and alterations omitted).

-19-

"A complete failure to accommodate, in the face of repeated requests, might suffice as evidence to show the deliberateness necessary for constructive discharge." Boughton v. Town of Bethlehem, 2015 WL 5306077, *12 (N.D.N.Y. 2015) (*citing* Talley v. Family Dollar Stores of Ohio, 542 F.3d 1099, 1109 (6th Cir. 2008) (internal alterations omitted). As outlined above, plaintiff failed to plead that he requested an accommodation for any of his conditions even once, let alone repeatedly.

Instead, plaintiff alleges that "said changes in work conditions were either intended to, or did, in fact, have the effect of provoking" his withdrawal from the workplace and that, "[b]y making the foregoing changes [d]efendant subjected [p]laintiff to constructive discharge, as [p]laintiff's continued employment would have required submission to the foregoing changes and conditions, beginning the 'very next day' and without discussion". Amended Complaint [17], ¶¶ 29-30. However, plaintiff's withdrawal from his employment demonstrates that he never actually experienced the change in work conditions. This is insufficient to allege a claim based upon constructive discharge, either independently or coupled with his allegation of a failure to accommodate:

> "Plaintiff here has not alleged that Defendant simply ignored repeated requests for accommodation. The Plaintiff submitted two doctor's notes to the Defendant. The Defendant responded with requests for more information in order to determine a reasonable accommodation for the Plaintiff. Plaintiff failed to respond and never returned to work. . . . Plaintiff was not forced to work in conditions which exacerbated his disability, creating such intolerable working conditions that he had no other choice but to resign. Therefore, Plaintiff has not shown an adverse action in order to prove discrimination."

Boughton, 2015 WL 5306077 at *12; *see also* Theilig v. United Tech Corp., 415 F. App'x 331, 334 (2d Cir. 2011) (Summary Order) ("[plaintiff] argues . . . that there was no evidence of 'intolerable working conditions,' because he was no longer at work. [Plaintiff] therefore argues

in essence that the purported failure to accommodate is tantamount to constructive discharge. [Plaintiff's] concession that there were no intolerable working conditions, however, is fatal to his claim under the law of this Circuit" (internal citations omitted)).

Accordingly, plaintiff has not stated a claim for constructive discharge.

### 3. Plaintiff Has Failed to State a Claim for Discrimination Based upon an Adverse Action

To state a claim for intentional disability discrimination based upon an adverse action, a plaintiff must allege:  "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability or perceived disability."  Capobianco, 422 F.3d at 56.  Here, in addition to failing to plausibly allege that he suffers from a disability within the meaning of the ADA (addressed above), plaintiff failed to make any allegation sufficient to satisfy the final element of this claim. I agree with defendant that plaintiff does not plausibly allege facts sufficient to infer that the defendant's plan to move his workstation, or to include repairing returned equipment in plaintiff's job duties, were actions taken "because of" his alleged disability.  *See* defendant's Memorandum of Law [18-1], pp. 9-11.

In response, plaintiff argues that "the complaint does list specific disabilities and specific persons who were told of it".  Opposing Declaration ([25], ¶ 10.  "At a minimum, the complaint states that [d]efendant knew of particularly listed disabilities from 2017-2019 when he complained of actions took place – removal of prior accommodations and change in job conditions adverse to both [p]laintiff and his accommodations."  Id., ¶ 14.  In addition, and without citing support, plaintiff argues that an employer's "delay in ADA discrimination makes

an [e]mployee's claim to discrimination impossible to state, unless the removal of accommodations takes place mere days after disclosure of disabilities or the employee's exercise of some other ADA rights". Id., ¶ 20.

Where a plaintiff is unable to plead specific facts that plausibly allege a causal connection, temporal proximity between the protected activity and the adverse action may indirectly satisfy this requirement at the pleading stage.  "Although temporal proximity between protected activity and adverse employment action can support an inference of discriminatory intent . . . the Supreme Court has suggested that the temporal proximity must be very close". Riddle v. Citigroup, 640 F. App'x 77, 79 (2d Cir. 2016) (Summary Order) (*citing* Clark County School District v. Breeden, 532 U.S. 268, 273 (2001)) (internal quotations and citations omitted). This court has found that temporal proximity of two months can support such an inference. *See* Mulvaney v. City of Rochester, 2019 WL 2250014, *11 (W.D.N.Y. 2019).  However, within the Second Circuit, courts have determined that no such inference is supported where the gap in time ranged from four months to two years. *See, e.g.* Parada v. Banco Industrial De Venezuela, C.A., 753 F.3d 62, 70 (2d Cir. 2014) (four months); and Vinson v. New York City Department of Corrections, 2006 WL 140553, *7 (E.D.N.Y. 2006) (greater than two years).

Here, plaintiff points to his disclosures to defendant in 2015 (generally) and in 2017 (of particular conditions) as the allegations that satisfied the causation element of the adverse action cause of action.  Opposing Declaration [25], ¶¶ 14, 16-20.  However, given that these disclosures took place two to four years prior to the alleged 2019 adverse action (*i.e.* "removal of prior accommodations and change in job conditions") (id., ¶ 14), they are insufficient to support an inference of causation. *See* Vinson, supra.  Plaintiff advances no other arguments to support the causation element.

-22-

Accordingly, I find plaintiff has failed to plausibly allege facts sufficient to support an inference of causation, and has not, therefore, stated a claim for discrimination based upon an adverse action.

## F.     NYSHRL Claims

"[I]n the absence of any remaining federal claims, the appropriate analytic framework to be applied to discrimination claims based on a 'disability' as defined by New York state and municipal law is a question best left to the courts of the State of New York." Giordano v. City of New York, 274 F.3d 740, 754 (2d Cir. 2001).  See Brief v. Albert Einstein College of Medicine, 423 F. App'x 88, 93 (2d Cir. 2011) (Summary Order) ("because the law of New York in regard to relative state and federal disability claim analysis is still developing, we see no reason to decide them in this appeal . . .  Instead, in the absence of any continuing basis for federal question jurisdiction, we leave these issues to the parties to pursue in state court if the plaintiff seeks to reinstate his state and city law claims in that forum").

Therefore, I recommend that the court not exercise supplemental jurisdiction over plaintiff's NYSHRL claims.  See Hernandez v. International Shoppes, LLC, 100 F. Supp. 3d 232, 268 (E.D.N.Y. 2015).

## G.     Dismissal Without Leave to Move to Amend

Finally, I recommend dismissal without leave to further amend the Amended Complaint.  It is within this court's discretion to order a case closed when plaintiff has not sought leave to amend.  Anatian v. Coutts Bank (Switzerland) Ltd., 193 F.3d 85, 89 (2d Cir. 1999) ("we will not deem it an abuse of the district court's discretion to order a case closed when leave to amend has not been sought" (internal quotation omitted)); see also Porat v. Lincoln Towers Community Association, 464 F.3d 274, 276 (2d Cir. 2006) ("[e]specially given that plaintiff's

counsel did not advise the district court how the complaint's defects would be cured, upon all the facts of this case we find no abuse of discretion and decline to remand for repleading").

Here, plaintiff is represented by counsel.  Plaintiff's counsel incorporated into his Opposing Declaration [25] only a single reference to amending the complaint, when he stated in the summary of his opposition to defendant's motion, "[p]laintiff's complaint is sufficiently detailed to either withstand dismissal or justify leave to amend if this Court finds it does not." Opposing Declaration [25], ¶ 2(d).  Nonetheless, plaintiff did not cross-move to amend his complaint, explicitly request leave to amend, or attach any proposed amendment to his opposing papers, all of which plaintiff did in response to defendant's first motion to dismiss.  *Compare* Opposing Declaration [25] *with* Notice of Plaintiff's Motion for Leave to Amend Complaint and Deny [W]ithout [P]rejudice as [M]oot Defendant's FRCP 12(b)(6) Motion to [D]ismiss [13] and attached proposed Amended Complaint [13-1].

Moreover, the Amended Complaint is plaintiff's second attempt at pleading his claims.  At the time plaintiff drafted his Amended Complaint, he had the benefit of defendant's first motion to dismiss, which made the same arguments as those it made in the current motion. *Compare* Memorandum of Law in Support of Defendant's Rule 12(b)(6) Motion to Dismiss [7-1] *with* Memorandum of Law in Support of Defendant's Rules 12(b)(6) Motion to Dismiss Plaintiff's Amended Complaint [18-1].  Plaintiff crafted his Amended Complaint specifically to address defendant's arguments concerning his first complaint and to address the pleading requirements of federal practice.  *See* Notice of Plaintiff's Motion for Leave to Amend Complaint and Deny [W]ithout [P]rejudice as [M]oot Defendant's FRCP 12(b)(6) Motion to [D]ismiss [13], ¶¶ 4-6.  Under these circumstances, this court is within its discretion to dismiss a complaint without leave to amend:

> "It would be a murky question if [plaintiff's] claim could survive if plaintiff were *pro se*, and if this were her first complaint. Neither is the case. Plaintiff is represented by experienced counsel and has already had her claim dismissed once for its inadequacy. . . . Such sparse and ill-supported pleadings cannot carry a counselled plaintiff's pleadings through a motion to dismiss. Thus, plaintiff has asserted no viable ADA discrimination claim, and her claim must be dismissed with prejudice."

Knight v. County of Cayuga, 2020 WL 618112, *9 (N.D.N.Y. 2020).

Accordingly, I recommend dismissal without leave to amend.

## CONCLUSION

For these reasons, I recommend that defendant's motion [18] to dismiss be granted. Unless otherwise ordered by District Judge Vilardo, any objections to this Report and Recommendation must be filed with the clerk of this court by March 10, 2021. Any requests for extension of this deadline must be made to Judge Vilardo. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new

arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: February 24, 2021

_____
JEREMIAH J. MCCARTHY
United States Magistrate Judge